CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/25/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

DEVANN DILLARD,

                *Plaintiff,*

v.

THE CITY OF LYNCHBURG, *et al.*,

                *Defendants.*

CASE NO. 6:22-cv-00031

MEMORANDUM OPINION & ORDER

JUDGE NORMAN K. MOON

      Plaintiff Devann Dillard, an African American male, brings state and federal law claims against the City of Lynchburg and its police officers, alleging they racially profiled him and used excessive force during an unlawful seizure. Defendants move to dismiss all his claims.[1] Because Plaintiff fails to allege facts showing that the officers whose motions are before the Court ("Defendant Officers") engaged in unconstitutional conduct, or that the City of Lynchburg maintained a discriminatory policy or custom, Defendants' motions to dismiss will be granted.[2] Plaintiff's case will proceed against Officer Cox.

---

[1] The Defendants whose motions are before the court are the City of Lynchburg, Titus Burgess, Alex Lucy, Elijah Phelps, Caitlyn Williams (identified in the Complaint by her maiden name, Caitlyn Pritchard), Seth Reed, Javaz Williams, Gary Abbott, Kelsey File, and Jaymie Turner.

[2] Plaintiff's state law claims will be dismissed without discussion because Plaintiff concedes that his allegations fail to plead such claims. Dkt. 27 at 3.

1

## Background[3]

This case centers primarily on Defendant Officer Cox and other named Defendants allegedly unlawfully seizing and using excessive force against Plaintiff on June 2, 2020.

### A. Four Traffic Stops Before June 2, 2020

Before the June 2, 2020 event, Plaintiff alleges that while driving or riding in his red Dodge Charger vehicle, he was stopped four times by Lynchburg police officers between April 2020 and June 2020. Dkt. 12 ¶¶ 23–26. Plaintiff alleges that there "are several red Dodge Chargers similar in appearance to the Plaintiff's car in Lynchburg" and that he "regularly meets up and drives with the owners of these cars." *Id.* ¶ 20. The owners of these other red Dodge Chargers are white. *Id.* Unlike Plaintiff, these white owners were not stopped by police in the area between April 2020 and June 2020. *Id.* ¶¶ 20–22. Plaintiff also alleges that he "possessed a valid concealed carry permit" and "owned and regularly carried a 9mm Smith and Wesson handgun on his person." *Id.* ¶ 19.

The first traffic stop occurred in April 2020. Plaintiff's friend, Kevin Womack, was driving Plaintiff's vehicle while Plaintiff rode as a passenger. *Id.* ¶ 23. Officer Waterman pursued Plaintiff's vehicle for about two miles before initiating a traffic stop reportedly because the vehicle's window was too dark. *Id.* While Officer Waterman ran Plaintiff and Womack's identification, Officer Bryan arrived on the scene, "falsely claimed to smell marijuana," and ordered Plaintiff and Womack to exit the vehicle. *Id.* Officer Bryan requested to search Plaintiff's vehicle, which Plaintiff denied. However, the officer proceeded to search his vehicle, finding "a legal marijuana grinder but no marijuana or any other illicit substance or contraband."

---

[3] The following facts are alleged in Plaintiff's Amended Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

*Id.* The officers released Plaintiff with a warning. *Id.*

About two weeks later, Officer Sawyer followed Plaintiff while he was driving his vehicle for about a mile. *Id* ¶ 24. Plaintiff allegedly obeyed all traffic laws and did not commit any infractions. *Id*. Once Plaintiff stopped his vehicle and exited his vehicle, Officer Sawyer drove by him at a walking pace and noticed a firearm being openly carried on Plaintiff's hip. *Id.* Officer Sawyer immediately came to a stop, exited his vehicle, detained Plaintiff, and demanded to see Plaintiff's identification and concealed carry permit. *Id.* Upon reviewing Plaintiff's documentation, Officer Sawyer told Plaintiff not to speed in the future and released him with a warning. *Id.*

In May 2020, Plaintiff was stopped by Officers James Foster and Zachary Miller for allegedly failing to completely stop his vehicle before exiting a gas station. *Id.* ¶ 25. During the stop, Officer Foster asked Plaintiff if he had any firearms in his vehicle. *Id.* Plaintiff admitted that he had possession of a firearm and consented to the officer's request to run its serial number. After confirming the firearm's registration, Officer Foster released him with a warning. *Id.*

Two days later, Officers Waterman and Dubie stopped Plaintiff because his exhaust pipe purportedly was too loud. *Id.* ¶ 26. Plaintiff claims that the exhaust system was legal and not loud. *Id.* During the stop, Officer Waterman requested to run the serial number of Plaintiff's firearm, which he consented to. *Id.* After verifying the firearm's registration, Plaintiff was released with a warning. *Id.*

None of the officers who stopped Plaintiff before June 2, 2020 are named as defendants in this case.

**B. Alleged Unlawful Seizure and Excessive Force on June 2, 2020**

During a protest on the night of June 1, 2020, shots were reportedly fired at Lynchburg

police officers. *Id.* ¶ 30. Around the early morning of June 2, 2020, Plaintiff alleges that Lynchburg may have issued a "Be On the Lookout" ("BOLO") for a red Dodge Charger believed to be involved in the shooting. *Id.* ¶ 31. The BOLO did not provide any information about the vehicle's license plate number, the driver, or any of its occupants. *Id.* ¶ 32. On that same day, the Lynchburg Mayor issued a city-wide curfew for its residents from 8:00 p.m. to 6:00 a.m. due to the civil unrest. *Id.* ¶ 35.

Around 8:30 p.m. on June 2, 2020, Plaintiff parked his red Dodge Charger at a gas station in Lynchburg. *Id.* ¶¶ 36–37. At that point in the night, Plaintiff alleges the BOLO "if it actually existed, had expired or should have expired." *Id.* ¶ 38. Police officers arrived at the gas station in response to a report that individual was carrying a firearm in the store. *Id.* ¶ 40. The officers reminded all patrons about the city-wide curfew and cleared the store of all patrons, including Plaintiff. *Id.* ¶ 41. Plaintiff's red Dodge Charger was "parked in the plain view of all the" Lynchburg officers, but none of the named Defendants "inspected or examined the red Dodge Charger as it sat in the parking lot." *Id.* ¶¶ 42–43.

Plaintiff left the gas station and drove home. *Id.* ¶ 44. The Lynchburg officers allegedly "only became interested in the red Dodge Charger when they saw" Plaintiff, a Black man, enter the vehicle. *Id.* ¶ 45. Defendant Officer Cox followed Plaintiff's vehicle to his home without stopping him. *Id.* The Defendant Officers followed Officer Cox. *Id.* ¶ 47. Plaintiff alleges that he "obeyed all laws and drove home safely." *Id.* ¶ 44.

When Plaintiff reached his home, he parked and exited his vehicle. *Id.* ¶ 48. Numerous police vehicles with their lights flashing immediately pulled up beside Plaintiff's vehicle. *Id.* Defendant Officer Cox, along with other Lynchburg police, "approached the Plaintiff with their firearms drawn and pointed directly at the Plaintiff." *Id.* ¶ 49. Plaintiff alleges they did not have

probable cause or reasonable suspicion that Plaintiff had committed any crime. *Id.* ¶¶ 50–53. Defendant Officer Cox ordered "Plaintiff to put his hands up, drop to his knees, and lay face-down on the pavement." *Id.* ¶ 54. Plaintiff complied. *Id.*

Defendant Sergeant Burgess arrived on scene, followed shortly by named Defendants Phelps, Pritchard, Turner, Williams, Abbott, Booth, File, and Lucy "who circled the Plaintiff at gunpoint and ordered him to get back down on the pavement, face-down." *Id.* ¶ 55. Defendant Officer Cox, "with a knee in the middle of Plaintiff's back," handcuffed Plaintiff and lifted him to a seated position. *Id.* ¶ 56.

Once detained, Defendant Sergeant Burgess interrogated Plaintiff, claiming his vehicle was associated with the shooting the night before. *Id.* ¶ 57. Plaintiff identified himself to Burgess and explained that he worked as a caregiver for a veteran who could verify that he was working on the nights in question. *Id.* ¶ 59. Defendant Burgess called and spoke with Lt. Singleton who order Plaintiff's release. *Id.* ¶ 60. Defendant Burgess then removed the handcuffs on Plaintiff's wrists and released him. *Id.* ¶ 61. All officers left the scene without explanation. *Id.* In total, Plaintiff was held at gunpoint by fourteen officers for eight minutes. *Id.* The purported "BOLO was lifted ten minutes after Plaintiff's release."[4] *Id.* ¶ 62.

The next day, Plaintiff filed a formal complaint with the Lynchburg police concerning the stop the night before. *Id.* ¶ 63. Plaintiff attached the response letter that he received from the police department to his Amended Complaint. *Id.* ex. 1. According to the letter, an internal investigation found that "the vehicle stop was not conducted in accordance with [Lynchburg

---

[4] This allegation contradicts Plaintiff's prior allegations. He alleges that around 8:30 p.m. on June 2, 2020, the BOLO "if it actually existed, had expired or should have expired." *Id.* ¶ 38.

police] policies." *Id.* The letter also states that "appropriate measures has been taken to ensure that this type of incident will not reoccur in the future." *Id.*

### C. Plaintiff's Amended Complaint and Defendants' Motions to Dismiss

Based on these allegations, Plaintiff brings five claims against Defendants. First, he brings a § 1983 claim against the individual Defendant Officers, alleging they racially profiled him in violation of the Fourteenth Amendment's equal protection clause. *Id.* ¶¶ 65–71. Second, Plaintiff brings a § 1983 claim against the individual Defendant Officers for allegedly using excessive force and unlawfully seizing him on June 2, 2020 in violation of the Fourth Amendment. *Id.* ¶¶ 72–79. Third, he asserts a *Monell* claim against Defendant City of Lynchburg, alleging that the City maintains a policy or custom that resulted in Plaintiff's Fourth Amendment rights being violated. *Id.* ¶¶ 80–84. For his last two claims, Plaintiff asserts state law claims against Defendants but has since conceded that his allegations fail to sufficiently plead such claims. Dkt. 27 at 3–4. As such, the Court will dismiss his state law claims.

Defendants City of Lynchburg, Burgess, Lucy, Phelps, Pritchard, Reed, Williams, Abbott, File, and Turner move to dismiss Plaintiff's claims against them. Dkts. 21, 26, 32, 34.[5] Defendant Cox also moved to dismiss Plaintiff's claims. Dkt. 41. But during the motion to dismiss hearing, defense counsel withdrew his motion. As such, the Court will deny Defendant Cox's motion to dismiss as moot.

### Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual

---

[5] Defendants Abbott, File, and Turner's motions to dismiss, Dkts. 26, 32, 34, adopt Defendants Burgess, Lucy, Phelps, Pritchard, Reed, Lynchburg, and Williams' memorandum filed in support of their motion to dismiss, Dkt. 22.

6

allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in a plaintiff's favor, *Rubenstein*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

### Claims against Sgt. Burgess and Officers Phelps, Pritchard, Turner, Williams, Abbott, Booth, File, and Lucy

Plaintiff alleges that these Defendants violated his Constitutional rights in multiple ways. He alleges that they violated his Fourteenth Amendment right to equal protection of the law by racially profiling him and violated his Fourth Amendment right to be free from unreasonable seizure by unlawfully seizing him and using excessive force.

A. *Qualified immunity*

When assessing whether Plaintiff can make out these claims, the Court must consider them in light of the doctrine of qualified immunity. Local officials sued in their individual capacities for violations of federal constitutional or statutory rights are entitled to qualified immunity if the right was not clearly established at the time of the violation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must ask (1) whether the facts "make out a violation of a constitutional" or statutory right and (2) "whether that right was 'clearly established' at the time of [Defendants'] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The protection of qualified immunity is "ample" for "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986). The Fourth Circuit has stated that qualified immunity protects officials who make "bad guesses in gray areas" about the constitutionality of their actions, while "transgressing bright lines" creates liability. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992).

District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The inquiry also ends "if no right is transgressed … because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (citing *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir.1996)).

B. *Equal Protection Claim*

Plaintiff brings a § 1983 claim against Defendants, in their individual capacities, based on the allegation that they violated the Fourteenth Amendment's guarantee of equal protection of the law by racially profiling him. Dkt. 12 ¶¶ 65–70. Specifically, he alleges that "[t]he defendants, acting in concert and jointly, singled out the Plaintiff for pursuit, detention, and investigation on the basis of his race." *Id.* ¶ 66. Defendants move to dismiss Plaintiff's racial profiling claim for failure to state a claim for relief.

The Equal Protection Clause of the Fourteenth Amendment prohibits police officers from selectively enforcing laws based on race. *See Whren v. United States*, 517 U.S. 806, 813 (1996). To prevail on a selective enforcement claim, a plaintiff ultimately "must prove that [Defendants'] conduct (1) was motivated by a discriminatory intent; and (2) had a discriminatory effect." *Johnson v. Holmes*, 782 F. App'x 269, 276–77 (4th Cir. 2019) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 634–35 (4th Cir. 2016)). "[A] plaintiff must plead sufficient facts to 'demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Green v. Maroules*, 211 F. App'x 159, 162 (4th Cir. 2006) (quoting *Williams v. Hansen,* 326 F.3d 569, 576 (4th Cir. 2003)).

In other words, "a plaintiff must show not only that similarly situated individuals were treated differently, but that there was 'clear and intentional discrimination.'" *Cent. Radio*, 811 F.3d at 635 (quoting *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 825 (4th Cir.1995)).

  i. *Allegations that Defendant Officers Engaged in Racial Profiling*

The Amended Complaint indicates that a "Be On the Lookout" (BOLO) alert may have been issued for a red Dodge Charger, based on potential involvement with a shooting the day

9

before Plaintiff was detained. Dkt. 12 ¶ 31. The BOLO lacked information about the license plate number or any traits of the driver. *Id.* ¶ 32. Plaintiff alleges that prior to the stop, all the named Defendant Officers ignored Plaintiff's red Dodge Charger where it was "in plain view of all the LPD officers" "as it sat in the parking lot [of the 7-Eleven store], even though it was purportedly the subject of a BOLO." *Id.* ¶¶ 42–43. Rather, Plaintiff alleges, the Defendant Officers "only became interested in the red Dodge Charger when they saw a Black man[,] namely the Plaintiff, enter the car." *Id.* ¶ 45. Defendants were at the 7-Eleven because "LPD officers responded to a report of an individual with a firearm in the 7-11 (sic)." *Id.* ¶ 40.

Plaintiff alleges that Officer Cox followed him from the 7-Eleven, and that all the other named Defendant Officers followed Officer Cox. *Id.* ¶¶ 46–47. When Plaintiff exited his vehicle at his home, "[n]early instantly, numerous police vehicles pulled up beside the Plaintiff's vehicle with lights flashing." *Id.* ¶ 48. After Officer Cox announced a felony stop and Plaintiff complied with Officer Cox's order to get on the ground, Sgt. Burgess and the other named Defendant officers "arrived on scene." *Id.* ¶¶ 54–55. Sgt. Burgess questioned Plaintiff about the shooting the day before, while the other named Defendant Officers "circled the Plaintiff at gunpoint and ordered him to get back down on the pavement, face-down." *Id.* ¶¶ 55, 57.

Plaintiff alleges that "[t]he defendants, acting in concert and jointly, singled out the Plaintiff for pursuit, detention, and investigation on the basis of his race[;] that "the Defendant officers who acted in concert with Officer Cox[] stopped the Plaintiff and applied force [to] the Plaintiff at gunpoint because the Plaintiff was Black[;]" and that "White drivers of red Dodge Chargers were not stopped by the LPD and were not subjected to force at gunpoint." Dkt. 12 ¶¶ 66, 68, 69.

*ii.   Analysis*

Plaintiff's claim fails to make a showing of "clear and intentional discrimination" by Defendants. *See Sylvia Dev. Corp*, 48 F.3d at 825 (4th Cir.1995). Plaintiff alleges generally that "[w]hite drivers of red Dodge Chargers were not stopped by the LPD[6] and were not subjected to force at gunpoint" Dkt. 12 ¶ 69. However, inference of discrimination arises when there is disparate treatment of people who are similarly situated "in most relevant respects except their protected status, (e.g., gender or race)[.]" *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995) (superseded by statute on other grounds), *see also Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir. 2004) (finding a prima facie case for discrimination where a Black man showed that a store refused to accept his out-of-state check as payment on the same day that it accepted an out-of-state check payment from a white classmate).

Here, Plaintiff fails to allege that white drivers of red Dodge Chargers were similarly situated in several relevant respects: specifically, that they were on the road in the aftermath of the June 1 shooting and BOLO, and that they drove away from sites where police had responded to reports of someone with a gun. Given that the stop occurred during a period of civil unrest, the Court considers these elements of timing and context to be significant considerations in its analysis whether Plaintiff was treated differently than similarly situated people. Plaintiff's allegations that there were white drivers of red Dodge Chargers who were on the roads and not pulled over during a several month span (April–June 2020) fails to establish that the drivers were similarly situated in those key respects. Dkt. 12 ¶¶ 20–22.

---

[6] The allegation that in general Plaintiff was stopped more than white drivers of red Dodge Chargers could be relevant to a different claim of racial profiling, but not to a claim against these particular officers, because they did not perform those stops.

Additionally, the Defendants Officers whose motions to dismiss are before the Court did not make the initial decision to seize Plaintiff. Rather, according to the Amended Complaint, they arrived after Officer Cox had initiated the seizure; Plaintiff had already complied with Officer Cox's order to lie on the ground. Dkt. 12 ¶¶ 54, 55.[7] The order of events as the Amended Complaint lays them out does not support the allegation that the Defendant Officers were the ones to "single out" the Plaintiff for selective detainment and investigation, if indeed he was singled out due to his race. Plaintiff argues that he has stated a plausible racial profiling claim because he "has alleged concert of action" between Officer Cox and the officers who arrived on the scene later. Dkt. 27 at 2. However, he fails to support this bare statement with factual allegations in his Amended Complaint. Dkt. 12.

Taking all the allegations in the Amended Complaint as true and drawing reasonable inferences in Plaintiff's favor, the Court finds the allegations insufficient to establish a claim under the Fourteenth Amendment.[8]

C. *Fourth Amendment Claims*

Plaintiff raises a § 1983 claim against Defendants, in their individual capacities, for violating his Fourth Amendment rights when they allegedly unlawfully seized him during a traffic stop on June 2, 2020 and used excessive force in the course of that stop. Defendants move to dismiss Plaintiff's Fourth Amendment claim, asserting that Plaintiff has failed to state a claim

---

[7] Plaintiff alleges that "Defendant Burgess acted on false information without just cause when he ordered the high risk felony arrest of the Plaintiff[.]" Dkt. 12 ¶ 74. However, Plaintiff alleges no facts to support the claim that Sgt. Burgess directed the seizure and does not provide any specifics on the "false information."

[8] Having determined that the Defendant Officers did not violate the Fourteenth Amendment, the Court need not consider the second prong of a qualified immunity analysis with regards to equal protection.

for relief and that Defendants are entitled to qualified immunity.

The Court concludes that the moving Defendants did not seize Plaintiff and so are not liable for any unreasonable seizure. The Court also concludes that Defendants are entitled to qualified immunity on the question of excessive force.

    *i.    Unreasonable Seizure*

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV. A seizure has occurred when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The Fourth Circuit "has rejected any concept of a continuing seizure rule, noting that 'the Fourth Amendment ... applies to the initial decision to detain an accused[.]'" *Robles v. Prince George's Cnty., Maryland*, 302 F.3d 262, 268 (4th Cir. 2002) (quoting *Riley v. Dorton,* 115 F.3d 1159, 1163 (4th Cir.1997), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 35 (2010)).

When the Defendant Officers arrived, Officer Cox and others had already approached Plaintiff with guns drawn, and Plaintiff had complied with Officer Cox's order to lie on the ground. Dkt. 12 ¶¶ 49, 54, 55. Given that he had been ordered to the ground at gunpoint, a reasonable person in Plaintiff's position would not feel free to depart. Taking the facts alleged in the Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff was already seized when the Defendant Officers arrived. The Defendant Officers therefore could not

make the initial decision to detain him.[9] For this reason, the Defendant Officers were not the liable actors in any unlawful seizure of Plaintiff.

    ii.    *Excessive Force*

"Excessive-use-of-weapons allegations" are considered a "species" of excessive force claims and properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" *Bellotte v. Edwards*, 629 F.3d 415, 424 (4th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S.. 386, 388 (1989)). "[A]pplication of the reasonableness standard to excessive-weapons claims requires careful attention to the facts and circumstances of each particular case." *Id.* at 424–25 (internal quotation marks omitted). Factors relevant to a court's analysis include (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. However, courts must consider "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

The Fourth Circuit has emphasized that "[i]nvestigating officers may take such steps as are reasonably necessary to maintain the status quo and to protect their safety during an investigative stop." *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988). For instance, agents drawing weapons is "well within the range of permissible police conduct." *Id.* at 213. So, while "approaching a suspect with drawn weapons are extraordinary measures, such police procedures have been justified in this circuit as a reasonable means of neutralizing potential

---

[9] As addressed in footnote 6, above, Plaintiff alleges no facts supporting his contention that Sgt. Burgess directed the seizure.

danger to police and innocent bystanders." *Id.* at 213–14; *see also Gunsay v. Mozayeni*, 695 F. App'x 696, 701 (4th Cir. 2017) (finding officers entitled to qualified immunity when they "approached [the individual's] car with their guns drawn and pointed at [the individual], removed [her] from the car, forced her to the ground, and arrested her pursuant to two outstanding felony warrants, one of which was for evading arrest"); *Magwood v. Fowler*, No. 2:19-cv-2277, 2021 WL 2885975, at *4 (D.S.C. July 9, 2021) ("[T]here is no case that establishes that pointing a weapon at a suspect believed to be armed during an investigatory stop, where that suspect is not yet secure, violates the Fourth Amendment").

Plaintiff alleges Defendant Officer Cox, along with other named and unnamed Lynchburg police officers, "approached the Plaintiff with their firearms drawn and pointed directly at the Plaintiff." *Id.* ¶ 49. Defendant Officer Cox ordered "Plaintiff to put his hands up, drop to his knees, and lay face-down on the pavement, to which Plaintiff complied." *Id.* ¶ 54. After Defendant Cox had initiated a stop, Defendant Sergeant Burgess arrived on scene, followed by Defendant Officers Phelps, Pritchard, Turner, Williams, Abbott, Booth, File, and Lucy "who circled the Plaintiff at gunpoint and ordered him to get back down on the pavement, face-down." *Id.* ¶ 55. Defendant Officer Cox, "with a knee in the middle of Plaintiff's back," handcuffed Plaintiff and lifted him to a seated position. *Id.* ¶ 56. After Defendant Burgess spoke with Lt. Singleton, Defendant Burgess removed the handcuffs on Plaintiff's wrists and released him within about eight minutes of him being stopped. *Id.* ¶¶ 60–61.

Defendants Burgess Phelps, Pritchard, Turner, Williams, Abbott, Booth, File, and Lucy drew and pointed their weapons at Plaintiff when they arrived upon an investigatory stop being performed by Defendant Cox and other unnamed officers. Based on these allegations, these Defendants made a split-second decision to draw their weapons to assist with an on-going

15

investigatory stop, a circumstance that was "tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. Thus, drawing their firearms and ordering Plaintiff to the ground was not a clearly unreasonable "means of neutralizing potential danger to police." *See Taylor*, 857 F.2d at 213.

In addition, Plaintiff does not identify any decision, or combination of decisions, by the Supreme Court, the Fourth Circuit, or the Supreme Court of Virginia, clearly establishing that, at the time of the incident officers drawing their firearms when coming upon an investigatory stop—–in circumstances where other officers had already drawn weapons to perform the stop—amounts to excessive force. *See Gunsay*, 695 F. App'x at 701. Nor can the Court find any such authority for that proposition.

As such, Defendants Burgess, Phelps, Pritchard, Turner, Williams, Abbott, Booth, File, and Lucy are entitled to qualified immunity against Plaintiff's Fourth Amendment excessive force claim.

## Plaintiff's *Monell* Claims Against the City of Lynchburg

Defendants move to dismiss Plaintiff's *Monell* claims against the City of Lynchburg for failure to allege the existence of an official policy or custom that caused Plaintiff's constitutional deprivation. Dkt. 22 at 4–5. The Court agrees Plaintiff has failed to state a *Monell* claim.

A local government entity cannot be vicariously liable under § 1983 for injuries inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, it can only be sued directly under § 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

16

officers." *Id.* at 690; *see Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Thus, a local government such as the City is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981). That is, the entity's official policy or custom must have played a part in the alleged violation of federal law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985). A policy or custom for which a local government may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle*, 326 F.3d at 471 (internal quotation marks omitted) (cleaned up).

Plaintiff asserts two *Monell* claims against the City, both of which fail to state a claim for relief. First, Plaintiff claims that the City "maintains a policy or custom of allowing felony traffic stops (including the use of force against drivers at gunpoint) in cases where BOLO's are issued on the basis of vague descriptions of vehicles." Dkt. 12 ¶ 82. But this is a legal conclusion that Plaintiff fails to support with factual allegations. *See Simmons*, 634 F.3d at 768. Plaintiff does not allege that the City had "an express policy" allowing officers to perform traffic stops while holding drivers at gun point. *See Lytle*, 326 F.3d at 471. To the contrary, Plaintiff alleges that the City, after conducting an investigation, determined that the stop performed on Plaintiff "was not conducted in accordance with [Lynchburg Police Department] policies"—further indicating that the City did not have an express policy condoning Plaintiff's traffic stop on June 2, 2020. Dkt. 12 ¶ 63; Dkt. 12 ex. 1. Plaintiff's allegations also fail to give rise to a reasonable inference that the City had a "persistent and widespread" practice of allowing these types of stops. *See Lytle*, 326 F.3d at 471. Plaintiff only alleges that officers drew weapons on him once during a traffic stop

and does not allege that officers performed this type of stop on other individuals.

Second, Plaintiff alleges that the City "discriminated against [] Plaintiff through the policies or customs of the Lynchburg Police Department that condoned or ratified the racial profiling of the Plaintiff by the Defendant officers." Dkt. 12 ¶ 70. While Plaintiff alleges that he was stopped four times prior to the June 2, 2020 traffic stop, as discussed, he has failed to provide sufficient factual allegations underlying any of those incidents that, taken as true, would establish that any of the officers who stopped him violated his Fourteenth Amendment rights. As such, his *Monell* claim based on his alleged Fourteenth Amendment rights must fail. Thus, Plaintiff's *Monell* claims will be dismissed.

## Conclusion

For the above reasons, the Court **ORDERS** the following:

1. Defendant Cox's motion to dismiss is **DENIED as moot**, Dkt. 41;

2. Defendants Lynchburg, Burgess, Lucy, Phelps, Pritchard, Reed, Williams, Abbott, Turner, and File's motions to dismiss Plaintiff's claims are **GRANTED,** Dkts. 21, 26, 32, 34;

3. Plaintiff's state law claims are **DISMISSED**;

4. Plaintiff's Fourteenth Amendment and *Monell* claims are **DISMISSED**; and

5. Plaintiff's Fourth Amendment claims against Defendants Burgess, Lucy, Phelps, Pritchard, Reed, Williams, Abbott, Turner, and File are **DISMISSED.**

In summary, Plaintiff's claims against Defendant Cox survive the motions to dismiss.

The Clerk of Court is directed to send this Memorandum and Order to all counsel of record.

Entered this 25th day of September, 2023.

*[Signature]*

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

19